LAURENCE F. PULGRAM (CSB NO. 115163)
lpulgram@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
SEBASTIAN E. KAPLAN (CSB No. 248206)
skaplan@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, California 94104
Telephone: (415) 875-2300
Facsimile: (415) 281-1350

Attorneys for Defendant
PANDORA MEDIA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY YUNCKER, individually and on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PANDORA MEDIA, INC.,<br><br>Defendant. | Case No. CV 11-3113-CW<br><br>**PANDORA MEDIA, INC.'S MOTION TO STAY PROCEEDINGS PENDING DETERMINATION BY THE JUDICIAL PANEL OF MULTIDISTRICT LITIGATION ON WHETHER THIS MATTER SHOULD BE CONSOLIDATED AND COORDINATED**<br><br>Date:     September 8, 2011<br>Time:    2:00 P.M.<br>Dept:    Courtroom 2, Fourth Floor<br>Judge:   The Honorable Claudia Wilken |

# TABLE OF CONTENTS

**Page**

FACTS ...................................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 3

I.  YUNCKER FACES NO PREJUDICE FROM THE SHORT STAY PROPOSED
    BY PANDORA ............................................................................................................. 4

II. PANDORA WOULD SUFFER HARDSHIP IF THIS ACTION IS NOT STAYED .......... 5

III. THE INTERESTS OF JUDICIAL ECONOMY IN GRANTING A SHORT STAY
     OUTWEIGH THE NEGLIGIBLE PREJUDICE, IF ANY, PLAINTIFF MIGHT
     SUFFER ....................................................................................................................... 6

    A.  Denial of a Stay Pending the MDL Panel's Determination Would Lead to
        an Inefficient Use of Limited Court Resources .......................................................... 6

    B.  There is a Likelihood of Consolidation of This Case With the Google MDL .......... 7

    C.  The Early Status of This Case and Likely Coordination of Discovery With
        the Google Cases Even if This Matter is Not Consolidated With the Google
        MDL Weighs in Favor of a Short Stay ...................................................................... 9

CONCLUSION ........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Barnes v. Equinox Group, Inc.*,
   No. C 10-03586 LB, 2010 WL 5479624
   (N.D. Cal. Dec. 30, 2010) .................................................................................................. 7, 9

*Caldwell v. Am. Home Prods. Corp.*,
   210 F. Supp. 2d 809 (S.D. Miss. 2002) .................................................................................. 10

*Carden v. Bridgestone/Firestone, Inc.*,
   No. CIV.00-3017, 2000 WL 33520302
   (S.D. Fla. Oct. 18, 2000) ........................................................................................................ 10

*Chacanaca v. Quaker Oats Co.*,
   No. C 10-0502 RS, 2011 WL 441324
   (N.D. Cal. Feb. 03, 2011) ......................................................................................................... 4

*Fuller v. Amerigas Propane, Inc.*,
   Nos. C 09-2493 TEH, 09-2616 TEH, 2009 WL 2390358
   (N.D. Cal. Aug. 3, 2009) .................................................................................................. 3, 4, 7

*Landis v. Northern American Co.*,
   299 U.S. 248 (1936) .................................................................................................................. 3

*McGrew v. Schering-Plough Corp.*,
   No. CIV.A.01-2311, 2001 WL 950790
   (D. Kan. Aug. 6, 2001) ........................................................................................................... 10

*Moore v. Wyeth-Ayerst Laboratories*,
   236 F. Supp. 2d 509 (D.Md. 2002) ........................................................................................... 7

*Naquin v. Nokia Mobile Phones, Inc.*,
   No. CIV.A.00-2023, 2001 WL 1242253
   (E.D. La. Jun. 20, 2001) ......................................................................................................... 10

*Rivers v. Walt Disney Co.*,
   980 F. Supp. 1358 (C.D. Cal. 1997) ..................................................................................... 3, 4

*Smith v. Mail Boxes, Etc.*,
   191 F. Supp. 2d 1155 (E.D. Cal. 2002) .................................................................................... 3

**STATUTES**

Cal. Prof. & Bus. Code § 17200, *et seq.* .............................................................................................. 8

**RULES**

Fed. R. Civ. P. 12(b)(6) ......................................................................................................................... 5

Fed. R. Civ. P. 26(f) .......................................................................................................................... 5, 6

**TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

MDL Rule of Procedure 6.2 .................................................................................................. 2

**OTHER AUTHORITIES**

Manual of Complex Litigation § 22.35 (2004) ................................................................. 10

NOTICE IS HEREBY GIVEN that on September 8, 2011, at 2:00 p.m. or as soon thereafter as this matter may be heard, Defendant Pandora Media, Inc. ("Pandora"), by and through its counsel, will and hereby does move this court for a stay of proceedings in the above-captioned matter until a decision is reached by United States Judicial Panel on Multidistrict Litigation whether this case should be consolidated and coordinated in *In re: Google Inc. Android Consumer Privacy Litigation*, MDL Docket No. 2264. This motion is based on this Notice of Motion and Motion, the Declaration of Tyler G. Newby in support hereof, and the arguments and evidence presented at the time of this hearing.

**FACTS**

This case is a putative class action raising consumer privacy claims over the operation of Pandora's Internet radio application on mobile devices using the Google Android operating system. On June 23, 2011, Plaintiff filed a complaint on behalf of himself and a putative class of all users of Pandora's music application on Android devices. The complaint alleges seven causes of action against Pandora arising from Pandora's alleged use of location tracking services in its mobile application for Google's Android devices and for Pandora's alleged provision of that information to third party advertising services, including Google's AdMob, purportedly without users' consent. *See Yuncker* Compl., Dkt. No. 1.

This matter proceeds contemporaneously with eight consumer privacy class action complaints filed against Google, Inc. over its Android operating system, which are listed on the Schedule of Actions in *In re: Google Inc. Android Consumer Privacy Litigation*, MDL Docket No. 2264 (the "Android cases"). Declaration of Tyler G. Newby In Support of Pandora's Motion to Stay ("Newby Decl.") ¶ 11. The complaints in all of the Android cases allege that Google improperly records, uses and discloses geolocation information of users of the Android operating system, without their knowledge or consent. Four of the Complaints also allege that Google, both individually and in concert with the developers of applications that run on Android devices, which necessarily includes the Pandora application, track, use and disclose to third party advertising services information linked to the unique device identifier (UDID) of Android devices without users' knowledge or consent, allowing those services to compile databases of information

about each UDID. *See Pessano* Compl. ¶ 22 (Newby Decl. ¶ 11, Ex. Q); *King* Compl. ¶ 1 (Newby Decl. ¶ 11, Ex. O); *Levine* Compl. ¶ 18(e) (Newby Decl. ¶ 11, Ex. N).

The claims raised in this action comprise a subset of those in the Android cases. The putative class here—Pandora application users on Android systems—is a subset of the class alleged in the Android cases—all users of Android devices. Every cause of action raised in the *Yuncker* complaint is raised in at least one of the Android actions. Newby Decl. ¶ 12. Most importantly, the harm claimed here—disclosure of data about Pandora users to third party advertising services, including Google—is a subset of the harm in the Android cases, which claim harm from disclosure of data of users of various applications. Indeed, paragraph 1 of the complaint in this action alleges:

> This action challenges Pandora's practice of collecting the personal information of its users and then disseminating it to third-party advertising libraries, such as Google's AdMob.

Dkt No. 1, ¶ 1. The same disclosure of information to third party advertising services, and to Google, by Pandora and other applications is the subject of the claims in the other MDL cases. *Pessano* Compl. ¶ 22 (Newby Decl. ¶ 11, Ex. Q); *King* Compl. ¶ 1 (Newby Decl. ¶ 11, Ex. O); *Levine* Compl. ¶ 18(e) (Newby Decl. ¶ 11, Ex. N). Further, the Android cases allege that Google is responsible for the passage of information by users of applications such as Pandora's. For example, the *Levine* Complaint alleges that Google was responsible for "providing assurances to Plaintiffs and Class Members that any and all Android authorized applications were safe for downloading" (Newby Decl. ¶ 11, Ex. N ¶ 18(l)); for "fail[ing] to notify and warn Plaintiffs and Class Members of its covert activities within their mobile devices" (*id*. Ex. N ¶18(m)); and for "fail[ing] to block access to, and void the licensing agreements of Google Application Developers." *Id*. Ex. N ¶18(n).

On July 12, 2011, Pandora notified the MDL Panel in *In re: Google Inc. Android Consumer Privacy Litigation*, MDL Docket No. 2264 that this litigation was a related action, pursuant to MDL Rules of Procedure, Rule 6.2. Newby Decl. ¶ 9. Plaintiff has filed an opposition to Pandora's Notice. *Id.* ¶ 10. The MDL Panel took argument at a hearing on July 28,

2011 on Google's motion to transfer, but has not yet entered a decision. *Id.* ¶ 13. At that hearing, the Panel indicated that it believed the matter of transferring this action was not yet ripe or fully briefed, having arisen in an unexpected procedural posture. The MDL Panel is expected to hear and take under submission whether this litigation should be transferred at its next hearing on September 27, 2011. *Id.* ¶ 14. A decision whether to transfer this action is expected within seven to ten days following the hearing. *Id.* ¶ 15.

Unlike every other party to the litigations in the Schedule of Actions,[1] Plaintiff in this case has been unwilling to stipulate to a stay of these proceedings pending the MDL Panel's determination whether this matter should be transferred into the MDL. *Id.* ¶¶ 16–17.

## LEGAL STANDARD

A district court has the inherent authority to stay proceedings. *Smith v. Mail Boxes, Etc.*, 191 F. Supp. 2d 1155, 1157 (E.D. Cal. 2002) (granting stay pending MDL panel's decision on motion to transfer); *Landis v. Northern American Co.*, 299 U.S. 248, 254 (1936) (district courts have inherent authority to manage their dockets). "[A] majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved." *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1362 (C.D. Cal. 1997). *See also Smith*, 191 F. Supp. 2d at 1157. "When considering a motion to stay, the district court should consider three factors: (1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." *Rivers*, 980 F. Supp. at 1360. This Court has found granting a stay avoids expending judicial resources wastefully: "There is simply no reason for this Court to expend its time and energy on these cases until the pending motion before the MDL Panel is resolved, as transfer of this matter to another court would render redundant the efforts of this Court." *Fuller v. Amerigas Propane, Inc.*, Nos. C 09-2493 TEH, 09-2616 TEH, 2009 WL 2390358, at *2 (N.D. Cal. Aug. 3, 2009).

---

[1] With the exception of last week's *Cochran v. Google*, No. 11-cv-03688-DMR (filed July 27, 2011) (N.D. Cal.).

I. **YUNCKER FACES NO PREJUDICE FROM THE SHORT STAY PROPOSED BY PANDORA**

Pandora estimates its request for a stay will not delay this litigation by more than two months. If this Court denies the stay on the earliest possible day—the date Pandora files its reply in support of this motion, August 25, 2011—Pandora would file its response to the Complaint on September 5. Newby Decl. ¶ 18. By comparison, the MDL Panel will likely hear Pandora's motion to transfer these proceedings on September 27, 2011, a mere three weeks later. *Id.* ¶ 14. Assuming the MDL Panel requires ten days to issue a decision, *id.* ¶ 15, then in the event the MDL Panel denies the motion to transfer, Pandora will file its responsive pleading in this Court 45 days after it would have done so if this court denies the motion to stay. *Id.* ¶ 19. Given the complexity of this case, a delay of less than two months is virtually inconsequential and would not prejudice the Plaintiff. Furthermore, this is not a case where documents may be lost or witnesses' memories might fade if this Court grants the brief stay requested by Pandora. *See, e.g.*, *Fuller*, 2009 WL 2390358, at *1 ("Considering that both cases for which MDL treatment is sought are in very early procedural stages and that the MDL Panel is expected to hear this matter within a few months, any delay caused by this stay will be of very short duration, and unlikely to cause the degradation of memories or the loss of material evidence.").

Courts consistently grant similarly limited stays when a matter is being considered for transfer into an MDL proceeding. For example, in *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358 (C.D. Cal. 1997), the court found a similarly temporary stay would not prejudice the nonmoving party. That court granted the motion to stay on August 11 and noted "any delay would indeed be temporary since the MDL Panel will hear the Motion To Transfer And Consolidate on September 19." *Id.* at 1362 n. 2. Pandora requests a stay similar to that granted in *Rivers*. *See also, Fuller*, 2009 WL 2390358, at *2 (no prejudice from stay of a few months); *Chacanaca v. Quaker Oats Co.*, No. C 10-0502 RS, 2011 WL 441324, *1 (N.D. Cal. Feb. 03, 2011) (plaintiff failed to show prejudice from stay pending MDL hearing).

Yuncker's own delay of several months before filing suit demonstrates that neither he nor members of the putative class will be prejudiced by a short stay while the MDL Panel considers

1  whether this matter should be consolidated with the Android cases.  As noted in one of the
2  Android cases, *Urias et al. v. Google, Inc.*, No. C 11-02230 at *Urias* Complaint ¶ 23, the
3  information allegedly collected by applications running on Google's Android and Apple's iOS
4  operating systems, including Pandora's Android application, was publicized in a December 10,
5  2010 Wall Street Journal article.  Newby Decl. ¶ 20.  Plaintiff's own Complaint also cites an
6  April 2011 blog post which made certain allegations about Pandora's Android application.
7  *Yuncker* Compl. ¶ 21, 23–24 (Dkt. No. 1).  Nevertheless, Plaintiff waited until June 23 to file his
8  complaint.  Plaintiff's own dilatory actions belie any claim of urgency he may make in opposition
9  to this motion to stay.

   Moreover, Yuncker has already agreed that, if the matter is not included in the MDL, it will coordinate discovery with the MDL proceedings, which Yuncker must know will cause delays in discovery.  Newby Decl. ¶ 10, Exh. 10 ("Yuncker and his undersigned counsel will stipulate to coordinate discovery by whatever formal or informal means are necessary to avoid the unnecessary duplication of effort spanning across these cases.").  At the least, Yuncker has represented he is willing to delay discovery proceedings in this case until the parties before the MDL Panel have propounded their own discovery, so that the parties in this case can evaluate whether coordination is necessary.  In other words, Yuncker is demanding Pandora and this Court hurry up and wait.  Yuncker's position undermines any claim of prejudice and shows that the only impact of the refusal to stipulate to a stay is to impose unnecessary costs on Pandora.

## II.  PANDORA WOULD SUFFER HARDSHIP IF THIS ACTION IS NOT STAYED

Without a stay of this matter, Pandora would incur the expense of drafting and filing pleadings and preparing for court conferences that would ultimately be rendered moot if this matter is transferred into the Google MDL.  Pandora will need to prepare and file responsive pleadings, most likely a motion to dismiss under Rule 12(b)(6), in this action and then a second, redundant response in the MDL proceeding if this case is transferred.  Furthermore, this court has ordered a Case Management Conference on October 18, 2011, for which Pandora would need to prepare before knowing whether the MDL Panel will consolidate this action.  Under the Federal Rules of Civil Procedure, Pandora is required to prepare for a Rule 26(f) conference with

1  opposing counsel, prepare initial disclosures, and draft a joint Case Management Statement in the
2  weeks before the Case Management Conference. Because the next MDL Panel hearing is
3  scheduled for September 27, 2011, with a ruling expected by about October 7, Pandora could not
4  wait until it received the MDL Panel's decision before beginning its CMC preparations in this
5  matter, which may ultimately be rendered moot. Although some of this preparatory work would
6  be useful to Pandora in the MDL proceedings, it would be duplicative and inefficient, as
7  Pandora's counsel would need to prepare for and attend another Rule 26(f) conference with all the
8  parties in the MDL proceedings, revise its initial disclosures in coordination with Google and the
9  other defendants, and prepare entirely new papers for any Case Management Conferences ordered
10 by the MDL Panel.

Similarly, following the Rule 26(f) conference, absent a stay by this Court, discovery would commence in this action before the expected date for ruling by the MDL panel. It serves no purpose to open such piecemeal discovery in this action just weeks before the expected determination of the status of this action in the MDL proceeding.

### III. THE INTERESTS OF JUDICIAL ECONOMY IN GRANTING A SHORT STAY OUTWEIGH THE NEGLIGIBLE PREJUDICE, IF ANY, PLAINTIFF MIGHT SUFFER

#### A. Denial of a Stay Pending the MDL Panel's Determination Would Lead to an Inefficient Use of Limited Court Resources

Requiring Pandora to file a responsive pleading before a determination on MDL transfer would also lead to inefficiencies for this Court. Engaging in motion practice and case management activities would be a poor use of this Court's resources when there is a substantial likelihood that the MDL Panel will transfer this case away.

Following the schedule now in place, the earliest Pandora would file a responsive pleading in this Court is September 8, 2011. In that event, a hearing would be noticed for October 13, 2011, sixteen days after the MDL Panel's hearing on Pandora's motion to transfer. The MDL Panel is likely to rule on the motion to transfer during that time. The timing of these proceedings means there is a likelihood that the parties will have fully briefed a motion in response to the complaint, but that no decision will be reached if the MDL Panel transfers the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  case. For this Court to expend time reviewing the parties' motion papers when the MDL Panel
2  may make such efforts moot is an unnecessary risk. *Fuller*, 2009 WL 2390358, at *2. Similarly,
3  the time the Court spends preparing for a Case Management Conference and related deadlines
4  would also be wasted. *See Barnes v. Equinox Group, Inc.*, No. C 10-03586 LB, 2010 WL
5  5479624, *2 (N.D. Cal. Dec. 30, 2010) ("proceeding to the initial case management conference
6  where this Court will set discovery, alternative dispute resolution, class certification, and
7  dispositive motion deadlines, as well as a trial date, is not the most efficient use of judicial
8  resources or the parties' time and money given the potential that those dates may ultimately be
9  vacated and re-set by the transferee court if the MDL Panel grants the motion to transfer.").

Finally, judicial resources will be conserved if any judge assigned the MDL resolves the motions presented in this litigation, rather than this Court needing to become familiar with those issues. The MDL judge will become more familiar with the relevant facts and context of the novel theories raised by the plaintiffs in this and the *Android* cases because it will address all of the related complaints challenging those practices. Therefore, the MDL court will be more efficient in evaluating Pandora's responsive pleadings. *See Moore v. Wyeth-Ayerst Laboratories*, 236 F. Supp. 2d 509, 511-12 (D.Md. 2002) (holding a stay was appropriate where the MDL court had already determined the scope of the learned intermediary doctrine—a common legal issue in the instant litigation).

### B. There is a Likelihood of Consolidation of This Case With the Google MDL

There is a strong likelihood the MDL Panel will transfer this case. It is not necessary, however, for this court to decide that the MDL Panel *will* transfer this case, only that there is sufficient likelihood of a transfer that a stay may realize gains to judicial economy. *See Barnes*, 2010 WL 5479624, at *1 (holding it was unnecessary to "wade into the merits of the pending motion [to transfer].").

Pandora easily satisfies that threshold. As set forth above, this case is substantially similar to the other actions identified in the MDL Panel's Schedule of Actions. Each case arises from the same common nucleus of facts – the alleged collection and use of geolocation information and other device data from mobile devices using the Android operating system. The complaints also

1  allege common legal theories, including violations of the Computer Fraud and Abuse Act, the
2  California Computer Crime Law, and California's Unfair Competition Law, Cal. Prof. & Bus.
3  Code § 17200 *et seq*. Newby Decl. ¶ 10. Indeed, as explained above, the claims in this action
4  present a subset of the class, liability issues, and alleged harm raised in the other *Android* cases.
5  The common issues of fact and law suggest that Defendants' dispositive motions and discovery
6  will address overlapping issues, such as what data Defendants actually collect and whether
7  Plaintiffs pleaded adequately every element of the Computer Fraud and Abuse Act.
8        In opposing Pandora's notice of related action before the MDL Panel, Plaintiff raises
9  several unavailing objections to transferring this action. First, he contends the cases are distinct
10  because this case focuses only on the Pandora Android application, while the other cases
11  challenge Google's conduct in the operation of the Android operating system. *See* Newby Decl.
12  ¶ 13. Specifically, Plaintiff asserts that the principal issue in this action will be whether or not
13  Pandora has secured its users' consent to disclose their information in the ways that information is
14  passed on to Google or other advertising services. But even that issue overlaps entirely with the
15  other Android actions. If Pandora has secured adequate users' consent to the disclosure of
16  information that has occurred, then not only Pandora, but also Google, will be insulated from
17  Plaintiffs' claims by that consent. Conversely, to the extent that Google has secured Android
18  users' consent to disclosures either to itself, or to a third party, of the information at issue, that
19  would likewise insulate Pandora for such disclosures. Thus, even the consent issue presents
20  common questions that should be consistently resolved in all actions.
21        Moreover, the underlying allegations of liability will rely on the interaction between the
22  Pandora application and the Android operating system, the nature of the data available to Pandora
23  from the Android operating system, and the nature of information provided through these systems
24  to Google and the advertising services. For example, Yuncker alleges Google's AdMob
25  advertising library contains consumers' personal information, including their birthday, gender,
26  and postal code information, collected through Pandora. *Yuncker* Compl. ¶ 21, 23. Yuncker also
27  alleges that Android mobile devices transmit consumers' unique device identifier to Pandora,
28  which passes them on to the advertising services. *Yuncker* Compl. ¶ 22–23. Complaints in the

*King v. Google*, *Levine v. Google*, *Urias v. Google* and *Cochran v. Google* cases, each of which is currently under consideration for transfer into the Android MDL, raise nearly identical claims, Newby Decl. ¶ 12, and Pandora and Google will have similar defenses. Each of those four complaints, for example, alleges that Google acted both on its own, and in concert with application developers, to obtain and use Android device users' UDIDs, geolocation information, and other information.

While Plaintiff contends the motion to transfer will be denied because Pandora is not a named defendant in the actions pending before the MDL Panel, this fact alone is not dispositive. First, the development of facts for Plaintiffs' claims and Pandora's anticipated defenses in this action will necessarily overlap with discovery in the Google MDL. For example, both this case and the Android cases will likely involve discovery into what information from Android devices Google permits application developers to access and use; how the Android applications interact with the Android operating system; communications concerning accessing UDID and location information from Android devices; and notices provided to users by both Google and Pandora concerning the types of information accessed by both Google, application developers and third parties.

Finally, the likelihood of the MDL Panel transferring this litigation is not reduced by the fact the Clerk of this Court denied Pandora's administrative motion to consider whether this case was related to *United States v. Levine*. *See* Related Case Order (Dkt. No. 19); Newby Decl. ¶ 8. The Clerk's order does not explain why it determined that *Levine* is unrelated to the *Yuncker* action. Now that multiple other related actions have been filed against Google and are before the MDL Panel, the MDL Panel will have be able to see the benefits of coordinating and consolidating this action with the eight other actions against Google in the MDL.

### C. The Early Status of This Case and Likely Coordination of Discovery With the Google Cases Even if This Matter is Not Consolidated With the Google MDL Weighs in Favor of a Short Stay

Even if the MDL Panel does not transfer this case, proceedings will be slowed down as the parties coordinate discovery with the Android cases, as Plaintiff has offered to do. *See* Newby Decl. ¶ 10. *See also Barnes*, 2010 WL 5479624, at *2 ("even if the MDL Panel denies

the motion and the cases proceed before their respective district courts, that, too, is a factor that would affect the deadlines set in this action as discovery deadlines and trial dates in the other actions may either expedite or delay those set in this case.").

In contrast, granting the stay would in no way diminish judicial economy. Courts that have denied stays pending transfer to an MDL Panel have done so when pending motions raise idiosyncratic issues of state law, challenge the district court's jurisdiction (an issue that would pertain upon remand for trial from the MDL and is better decided early), or where a case has already progressed far in discovery or motions practice so that the potential transferor court has greater insight into pending motions than the potential transferee court. *See* Manual of Complex Litigation § 22.35 (2004) ("The reasons for a stay diminish, however, if the pending motions raise issues relating to the law of a single state that are unlikely to arise in other related cases, if MDL transfer appears unlikely, or if the absence of federal jurisdiction is clear."). None of these circumstances apply in this case. Yuncker's complaint raises no unique issues of state law that are not also alleged in the cases against Google noted for transfer to the MDL. Newby Decl. ¶ 10. This case has not progressed beyond the filing of the complaint, hence there is no reason why this court is in a superior position relative to the potential transferee court to decide pending motions. *See Naquin v. Nokia Mobile Phones, Inc.*, No. CIV.A.00-2023, 2001 WL 1242253, at *1 (E.D. La. Jun. 20, 2001) (denying a stay because there had been "prior substantial rulings in this case").

District courts that deny motions to stay pending transfer to an MDL Panel generally do so when there is a concurrent motion to remand that does not raise common issues of fact or law with the other cases pending before the MDL Panel. *E.g.*, *Caldwell v. Am. Home Prods. Corp.*, 210 F. Supp. 2d 809 (S.D. Miss. 2002); *McGrew v. Schering-Plough Corp.*, No. CIV.A.01-2311, 2001 WL 950790 (D. Kan. Aug. 6, 2001); *Carden v. Bridgestone/Firestone, Inc.*, No. CIV.00-3017, 2000 WL 33520302 (S.D. Fla. Oct. 18, 2000). The case law suggests that these cases are the exceptions that prove the rule—it is generally more economical to stay proceedings pending a motion to transfer to an MDL Panel unless there is an obvious defect in federal jurisdiction. As that exception has no application here, the general rule favoring stays should apply.

## **CONCLUSION**

Whether to grant the stay turns on a straightforward cost-benefit analysis. The cost of the stay is negligible. Not only is its duration limited, but even if these proceedings are not transferred to the MDL Panel, any delay avoided by denying this stay would be imposed later when this litigation would stall while the parties wait to coordinate discovery with the MDL proceeding. In contrast, the benefit of a stay is significant. This Court and Pandora will avoid significant work that will be rendered fruitless if the MDL Panel grants the motion to transfer. There is enough of a likelihood the MDL Panel will grant Pandora's motion to transfer that expending both the parties' and this Courts' resources on this case would likely be for naught. For the reasons above, Pandora respectfully requests this Court to stay these proceedings.

Dated:   August 4, 2011                                  FENWICK & WEST LLP

                                                         By: */s/ Sebastian E. Kaplan*
                                                             Sebastian E. Kaplan

                                                         Attorneys for Defendant
                                                         PANDORA MEDIA, INC.